**PUBLISHED**

Filed: September 21, 2009

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

FRANCOISE ANATE GOMIS,

*Petitioner,*

v.

ERIC H. HOLDER, JR., Attorney General,

*Respondent.*

No. 08-1389

## O R D E R

In a poll requested by a member of the Court on whether to rehear this case en banc, Judges Michael, Motz, King, Gregory, and Duncan voted to rehear this case, and Chief Judge Traxler, and Judges Wilkinson, Niemeyer, Shedd, and Agee voted to deny rehearing en banc. As a majority of active judges did not vote to rehear this case en banc, the poll failed.

Judge Niemeyer has written an opinion supporting the denial of rehearing en banc, and Judge Gregory has written an opinion dissenting from the denial of rehearing en banc.

Entered for the Court at the direction of Judge Niemeyer.

For the Court

/s/ Patricia S. Connor
Clerk

NIEMEYER, Circuit Judge, concurring in the denial of rehearing en banc:

Female genital mutilation is an abhorrent practice, and Senegal enacted a law in 1999 criminalizing it. Since then, the practice has been declining in Senegal, and the State Department's reports on Senegal state that female genital mutilation is now hardly practiced in populated areas, such as Dakar, where Francoise Gomis lived.

While Gomis gave her opinion that the practice was more prevalent than indicated in the State Department's reports, the administrative law judge chose to rely on the State Department's reports, concluding that Gomis was not attempting to be deceitful in giving her opinion but that she simply lacked "knowledge of the actual facts." At bottom, the judge concluded that Gomis had not established that it was more likely than not that she, as an educated adult, would be subjected to female genital mutilation upon return to Dakar, and the Board of Immigration Appeals (BIA) concurred.

On her petition for review of the BIA's decision, our role is not to make independent judgments on the facts but to defer to the agency's factfinding "unless any reasonable adjudicator would be *compelled* to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B) (emphasis added). On this record, we are not compelled to conclude to the contrary. The immigration judge had reliable facts on which to rest his factfinding. Moreover, contrary to Judge Gregory's argument in his dissenting opinion, our earlier decision in *Haoua v. Gonzales*, 472 F.3d 227 (4th Cir. 2007), does not compel a contrary factual finding in this case. That case was based on different facts in the context of a different country, Niger. Indeed, our reversal of the BIA's decision in *Haoua* was based on the immigration judge's speculation that the petitioner had a 10% chance of suffering female genital mutilation if she returned to Niger—a finding we concluded was not supported by the facts in the record—and on the government's concession that if the peti-

tioner returned to her family in Niger, "her likelihood of suffering FGM would approach 100%." *Id.* at 232.

Our deferential role in this case is well defined, and it requires that we deny Gomis' petition for the reasons given in the panel opinion. In these circumstances, our decision not to rehear this case is appropriate, especially in view of the fact that Gomis did not herself seek a rehearing en banc.

GREGORY, Circuit Judge, dissenting from the order denying sua sponte rehearing en banc:

Under the current immigration system in this country, refugees from Sub-Saharan Africa are some of the most disadvantaged petitioners before our courts. They are the beneficiaries of very few rights which allow them to immigrate and seek the protection of our law.

There is, however, one basis for asylum that is clearly established in both this Circuit and the other federal courts: protection from female genital mutilation. *Barry v. Gonzalez*, 445 F.3d 741, 745 (4th Cir. 2006). This procedure involves anything from cutting off the clitoris with scissors to the shearing off of the entirety of the visible parts of the female sex organs with a knife and sewing them together using twine. *See* World Health Organization, *Female Genital Mutilation: A Handbook for Frontline Workers* 13 (2000). It is often done to either very young girls or as a puberty rite, but may occur at any time in a woman's life. Beyond the risks of surgery using unsterilized implements, many women experience severe infection, become outcasts when they develop incontinence after losing so much of their genitals, or have life-threatening difficulties with childbirth. World Health Organization et al., *Eliminating Female Genital Mutilation: An Interagency Statement* 11 (2008) (describing some of the harmful effects of female circumcision).

Both past female circumcision as well as the threat of future cutting have been held by this Circuit to qualify a female refugee for asylum in the United States, a recognition of the importance which our law attaches to the petitions of females seeking protection from this dangerous and excruciatingly painful practice. *Haoua v. Gonzalez*, 472 F.3d 227, 231-32 (4th Cir. 2007) (holding that the likelihood of the petitioner being subjected to female genital mutilation upon her return to Niger qualified her for asylum). Our precedent has been clear in the standards by which we review eligibility for refugee status. This is why I felt compelled to call for an en banc poll in this case, as I believe the Court's opinion, *see Gomis v. Holder*, 571 F.3d 353 (4th Cir. 2009), is blatantly contrary to well-settled, unquestioned circuit precedent.*

The predictability of precedent and an evenhanded application of the law in like cases are principles which guide our decisions in all cases before us. The precedent of this Circuit is for us, and only us, to police and maintain. Therefore, while I hope that the Supreme Court will grant certiorari to consider Ms. Gomis's case, it cannot remedy the departure from settled precedent in our Circuit which this case represents. With all

---

*After our decision on the merits in this case, petitioner Gomis filed a petition for writ of certiorari at the Supreme Court on August 11, 2009. *Gomis v. Holder*, 571 F.3d 353 (4th Cir. 2009), *petition for cert. filed*, 78 U.S.L.W. 3091 (U.S. Aug. 11, 2009) (No. 09-194). I sought an en banc poll on the forty-sixth day after our decision, giving the litigants the full time available to them to seek en banc review in this Court. This Court continues to exercise jurisdiction over the case and may rehear it en banc, pending the Supreme Court's decision on Ms. Gomis's petition for writ of certiorari. I am sure that she and her counsel would welcome the chance to be heard before the full circuit. I am of the opinion that this Court should "offer[ ] the Supreme Court whatever benefit this court can give it by rehearing a case en banc before the Court decides whether to grant a petition for writ of certiorari." *Messer v. Kemp*, 831 F.2d 946, 957 (11th Cir. 1987) (granting the Eleventh Circuit jurisdiction over a sua sponte rehearing en banc when the petitioner had already petitioned the Supreme Court for relief and the Supreme Court had issued an emergency stay of execution pending filing of the petition for certiorari).

due respect to the majority, the reasoning contained therein is unsupported by precedent and makes no meaningful effort to distinguish the case from this Circuit's controlling decision in *Haoua v. Gonzalez*. It is my opinion that the paucity of distinguishing logic is because the facts in *Gomis* cannot be squared with that decision. In *Haoua*, the petitioner, a native of Niger, presented evidence that her family had given her to an elderly chieftain to be married and had performed the marriage ceremony in her absence while she was studying in the United States. 472 F.3d at 229-30. Per the customs of her tribe and as part of the marriage, she was required to undergo female genital mutilation. *Id.* at 230. This Court held that she had presented sufficient evidence for the Immigration Judge to find that she qualified for protection as a refugee. *Id.* at 232.

Similarly in this case, the petitioner testified that she was taken out of school by her parents and was to undergo female genital mutilation in order to marry a man in his sixties. *Gomis*, 571 F.3d at 355. She introduced evidence that after she fled to the United States, her father wrote her letters promising to use all means necessary to bring her back to Senegal and go through with the circumcision and marriage before his death. *Id.* at 364. Although my dissent to the Court's opinion sets out my reasoning more fully, *see id.* at 362-65, it suffices to note here that with facts so similar in the two cases and a positive credibility finding for Gomis, *Haoua* should have dictated the outcome in this case. Indeed, the case here is stronger and the harm caused by an erroneous decision greater because Gomis's family made it clear that were she to return to Senegal, there is no chance that she could escape circumcision at their hands. Neither invocation of sympathy nor innovation in the law of asylum was necessary to grant Ms. Gomis's petition; it merely required the application of our precedent—simple justice.

Again, for the reasons stated in my dissent to the decision on the merits of Ms. Gomis's claim and in this opinion, I admit that I am concerned about the effect that allowing this

precedent to stand will have on our consideration of the petitions of female refugees who seek protection from female genital mutilation. They deserve the protection of the *Haoua* precedent. I therefore must dissent.

Judge Michael, Judge Motz, Judge King, and Judge Duncan join in this dissent.